IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JEFFERY T. BINGHAM, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | No. 1:11-cv-00048 |
| v. | § § | JURY TRIAL DEMANDED |
| JEFFERSON COUNTY, TEXAS and SHERIFF G. MITCH WOODS, | § § § § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT[1]**

Respectfully submitted,

**MOORE & ASSOCIATES**

By: s/ Melissa Moore

Melissa Ann Moore
Federal Id. No. 25122
State Bar No. 24013189
Curt Hesse
Federal Id. No. 968465
State Bar No. 24065414
440 Louisiana Street, Suite 675
Houston, Texas 77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

**ATTORNEYS FOR PLAINTIFFS**

---

[1] This response is filed on behalf of Plaintiff Jeffrey T. Bingham and all individuals who filed written consents to become parties to this lawsuit pursuant to 29 U.S.C. § 216(b) except for Marlon Foots.  Mr. Foots is represented by John S. Morgan, MORGAN LAW FIRM, 2715 North Street, Suite 101, Beaumont, Texas 77701.  Notice of Consent (Docket Entry No. 210) at p. 3.

## TABLE OF CONTENTS

Table of Contents.................................................................................................................ii

Table of Authorities............................................................................................................iii

I.   Nature & Stage of Proceeding........................................................................................1

II.  Response to Movant's Claimed Undisputed Material Facts ..........................................2

III. Additional Material Facts ...............................................................................................3

IV. Issue to Be Ruled Upon by the Court.............................................................................9

    A. Issue...........................................................................................................................9

    B. Standard of Review ..................................................................................................9

V.  Summary of the Argument ...........................................................................................11

VI. Argument & Authorities...............................................................................................11

    A. The FLSA ...............................................................................................................11

    B. FLSA Violations.....................................................................................................13

    C. Willfulness..............................................................................................................14

VII. Conclusion ..................................................................................................................19

Signature .............................................................................................................................19

Certificate of Service .........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Amburgey v. Corhart Refractories Corp., Inc.,*
   936 F.2d 805 (5th Cir. 1991) .................................................................... 9

*Anderson v. Liberty Lobby,*
   477 U.S. 242 (1986) ................................................................... 9, 10, 11

*Anderson v. Mt. Clemens Pottery Co.,*
   328 U.S. 680 (1946) .................................................................... 11, 12

*Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.,*
   804 F.2d 879 (5th Cir. 1986) .................................................................. 10

*Beliz v. McLeod,*
   765 F.2d 1317 (5th Cir. 1985) ................................................................ 11

*Brock v. Superior Care,*
   840 F.2d 1054 (2d Cir. 1988) ................................................................. 15

*Bull v. United States,*
   68 Fed. Cl. 212 (Fed. Cl. 2005) .............................................................. 15

*Castillo v. Givens, Inc.,*
   704 F.2d 181 (5th Cir. 1983) .................................................................. 11

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) .............................................................................. 10

*Coke v. General Adjustments Bureau,*
   640 F.2d 584 (5th Cir. 1981) .................................................................. 10

*Dibidale of Louisiana, Inc. v. Am. Bank & Trust Co.,*
   916 F.2d 300 (5th Cir. 1990) ................................................................... 9

*Dole v. Elliott Travel & Tours, Inc.,*
   942 F.2d 962 (6th Cir. 1991) .................................................................. 15

*Elwell v. Univ. Hosps. Home Care Servs.,*
   276 F.3d 832 (6th Cir. 2002) .................................................................. 15

iii

*Funding Sys. Leasing Corp. v. Pugh,*
  530 F.2d 91 (5th Cir. 1976) ............................................................................ 3, 13

*Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.,*
  579 F.3d 546 (5th Cir. 2009) ................................................................................ 14

*Jefferson Co. Assoc. of Deputy Sheriffs and Correction Officers v.*
  *Jefferson Co., Tex.,*
  No. 1:10-cv-00535 (E.D. Tex. filed Sep. 7, 2010) ................................................ 8

*Jefferson Co. Assoc. of Deputy Sheriffs and Correction Officers v.*
  *Jefferson Co., Tex.,*
  No. E-189265 (172nd Dist. Ct., Jefferson County, Tex. filed Jan. 27, 2011) .......... 7

*Johnson v. City of Columbia,*
  949 F.2d 127 (4th Cir. 1991) ................................................................................ 13

*Lee v. Coahoma Co., Miss.,*
  937 F.2d 220 (5th Cir. 1991) .................................................................................. 1

*McIntyre v. Kroger Co.,*
  863 F. Supp. 355 (N.D. Tex. 1994) ....................................................................... 10

*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128 (1988) .............................................................................................. 14

*Mello v. Sara Lee Corp.,*
  431 F.3d 334 (5th Cir. 2005) .................................................................................. 9

*Melton v. Teachers Ins. & Annuity Assoc. of Am.,*
  114 F.3d 557 (5th Cir. 1997) ................................................................................ 10

*Murray v. Stuckey's, Inc.,*
  939 F.2d 614 (8th Cir. 1991) ................................................................................ 12

*Reich v. Bay, Inc.,*
  2 F.3d 110 (5th Cir. 1994) .................................................................................... 15

*Reich v. Monfort, Inc.,*
  144 F.3d 1329 (10th Cir. 1998) ............................................................................ 15

*Reyes v. Tex. EZPAWN, L.P.,*
  459 F. Supp. 2d 546 (S.D. Tex. 2006) .............................................................. 12, 14

*Rosado v. Deters*,
  5 F.3d 119 (5th Cir. 1993) ........................................................................ 10

*Shields v. Grocers Supply Co.*,
  568 F. Supp. 61 (S.D. Tex. 1983) ............................................................. 10

*Singer v. City of Waco*,
  324 F.3d 813 (5th Cir. 2003) ............................................................... 14, 15

*Skipper v. Superior Dairies*,
  512 F.2d 409 (5th Cir. 1979) ..................................................................... 11

*Stokes v. BWXT Pantex, L.L.C.*,
  424 F. App'x 324 (5th Cir. 2011) .............................................................. 14

*United States v. Diebold*,
  369 U.S. 654 (5th Cir. 1990) ..................................................................... 10

*Veillon v. Exploration Servs., Inc.*,
  876 F.2d 1197 (5th Cir. 1989) ................................................................... 11

## Statutes

29 U.S.C. § 203(g) ....................................................................................... 12

29 U.S.C. § 206(a) ....................................................................................... 12

29 U.S.C. § 206(a)(1) ................................................................................... 11

29 U.S.C. § 207(a) ....................................................................................... 12

29 U.S.C. § 207(a)(1) ................................................................................... 11

29 U.S.C. § 211(c) ....................................................................... 7, 11, 15, 18

29 U.S.C. § 216(b) ......................................................................................... 1

29 U.S.C. § 216(e) ..................................................................................... 3, 16

29 U.S.C. § 255(a) ................................................................................. 9, 12, 14

29 U.S.C. §§ 201-219 ........................................................................... passim

TEX. LAB. CODE ch. 61 .................................................................................. 2

v

**Other Authorities**

Sara Foley,
  *Police To Get 2 Weeks' Ike Pay*,
  GALVESTON CO. DAILY NEWS, Oct. 1, 2008............................................................ 5

**Rules**

FED. R. CIV. P. 12(b)(6) ......................................................................... 8

FED. R. CIV. P. 56 ..............................................................................passim

FED. R. CIV. P. 8(c)......................................................................... 3, 13

FED. R. EVID. 201 ................................................................................ 2

TEX. R. CIV. P. 162 ............................................................................. 6

**Regulations**

29 C.F.R. § 516.27 ............................................................................ 11

29 C.F.R. § 778.207(b)....................................................................... 14

29 C.F.R. § 790.21(b) ........................................................................ 12

29 C.F.R. §§ 553.222-553.223 ........................................................... 13

29 C.F.R. §§ 785.20-785.22 ............................................................... 13

29 C.F.R. pt. 516 .................................................................... 7, 12, 15, 18

29 C.F.R. pt. 578 ........................................................................... 3, 16

COMES NOW Plaintiff Jeffrey T. Bingham, individually and on behalf of all others similarly situated, and files this response in opposition to Defendants Jefferson County, Texas and Sheriff G. Mitch Woods' Motion for Summary Judgment (Docket Entry No. 224).  In support thereof, he would respectfully show the Court as follows:

## I.  NATURE & STAGE OF PROCEEDING

On February 1, 2011, Plaintiff Jeffery T. Bingham (referred to as "Plaintiff") filed a putative collective action lawsuit under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA") alleging that Defendants Jefferson County, Texas and Sheriff G. Mitch Woods[2, 3] (collectively referred to as "Defendants") failed to pay him and others similarly situated for all hours worked and for all hours worked in excess of forty (40) at one and one-half times his regular rate as required by law.  Pl.'s Original Compl. (Docket Entry No. 1).  Plaintiff also alleged that Defendants failed to comply with the FLSA's record keeping requirement and that Defendants willfully violated the FLSA.  Pl.'s Second Am. Compl. (Docket Entry No. 211) at ¶¶ 27-29.  Excluding Plaintiff, a total of one hundred seventy-six (176) current and/or former employees of Defendants have filed written consents to become parties to this lawsuit pursuant to 29 U.S.C. § 216(b).  Notices of Consent (Docket Entry Nos. 14-120, 122, 126-156, 158, 160, 162-169, 172, 182, 184-192, 194-195, 196-197, 199, 201-210, 212-213, 218.)  Defendant

---

[2] Sheriff G. Mitch Woods was joined as a named defendant on September 12, 2011.  *See*, Pl.'s Second Am. Compl. (Docket Entry No. 211).

[3] It is well settled that managerial personnel such as Sheriff Woods can be held individually liable as employers, along with the county, for violations of the FLSA.  *Lee v. Coahoma Co., Miss.*, 937 F.2d 220, 226 (5th Cir. 1991) (holding that an individual sheriff could be held an "employer" under the FLSA because the sheriff "clearly falls within the class of managerial personnel considered employers by the FLSA" and could exercise operational control under Mississippi law).

Jefferson County, Texas filed its answer on April 26, 2011, denying the material allegations in Plaintiff's complaint.[4, 5]   Def.'s Original Answer (Docket Entry No. 7.) Defendants have moved for summary judgment under FED. R. CIV. P. 56 on their limitations defense; they have also moved for summary judgment on Plaintiff's claims under TEX. LAB. CODE ch. 61.  However, because there are genuine issues as to material facts and because Plaintiff does not intend to proceed with his claims under TEX. LAB. CODE ch. 61, Defendants' Motion for Summary Judgment (Docket Entry No. 224) should be denied.

## II.  RESPONSE TO MOVANT'S CLAIMED UNDISPUTED MATERIAL FACTS

1.      Undisputed.[6]

2.      Disputed.  See paragraphs 14, 18-19 below.

3.      Undisputed.

4.      Undisputed.

5.      Undisputed.

6.      Undisputed by context clarified in paragraphs 25-29 below.

7.      Undisputed by context clarified in paragraphs 22-24 below but not material.[7]

---

[4] Defendant Jefferson County, Texas filed an answer to Plaintiff's amended complaint on May 23, 2011. Def.'s Answer (Docket Entry No. 124).

[5] Defendant Sheriff G. Mitch Woods filed his answer on November 15, 2011.  Def.'s Answer (Docket Entry No. 216).

[6] Defendants represent to the Court that Hurricane Ike made landfall "[o]n or about September 12, 2008." Defs.' Mot. Summ. J. (Docket Entry No. 224) at p. 3.  However, to be precise, Hurricane Ike made landfall at 2:10 a.m. CDT on September 13, 2008.  As such, Plaintiff requests that the Court take judicial notice that Hurricane Ike made landfall at 2:10 a.m. CDT on September 13, 2008.  *See*, FED. R. EVID. 201.

8.      Undisputed.

9.      Undisputed.

10.     Undisputed.

11.     Undisputed.

### III.  ADDITIONAL MATERIAL FACTS

12.     Plaintiff and members of the class were employed by Defendants as corrections officers.  Ex. A, DOL Compliance Action Report (Mar. 24, 2010) at pp. Bingham00009-Bingham00010.

13.     Defendant Jefferson County, Texas has a documented history of noncompliance with the FLSA.  Ex. B, DOL Case Summary (Sep. 5, 1996); Ex. C, DOL Case Summary (Nov. 5, 1997); Ex. A, DOL Compliance Action Report (Mar. 24, 2010) at p. Bingham00008 (discussing prior history); Ex. D, Letter from DOL to Cary Erikson (Nov. 10, 2011) ("It has also been determined that violations of the minimum wage and/or overtime pay provisions of the Act were disclosed by an investigation conducted by this agency *in 11/15/1997, after which you had given your assurance of full future compliance with all provisions of the Act*.  … The violations disclosed in this investigation *and your history of prior violations* have resulted in the assessment of a civil money penalty pursuant to section 16(e) of the FLSA and Regulations Part 578.") (emphasis added); Ex. E, Dep. of Patrick Swain (Jul. 19, 2012) 25:18-28:19.

---

[7] Arbitration and award is an affirmative defense that must be specifically pleaded by a defendant.  FED. R. CIV. P. 8(c).  Since neither Jefferson County, Texas or Sheriff G. Mitch Woods have done so, it has been waived.  *Funding Sys. Leasing Corp. v. Pugh,* 530 F.2d 91, 95 (5th Cir. 1976) ("[W]e look to the clearer principle embodied in FED. R. CIV. P. 8(c) that affirmative defenses *must* be set forth in a responsive pleading or be deemed waived.") (emphasis added).

14.     Defendant Jefferson County, Texas developed its own emergency closing policy and shared that policy with other Texas counties; Cary Erickson, Director of Human Resources for Defendant Jefferson County, Texas, also testified that he regularly communicated with other county human resources professionals through a Texas Association of Counties listserv regarding human resources issues, including emergency closing policies.  Ex. F, Emergency Closing Policy; Ex. G, Dep. of Cary Erikson (Jul. 12, 2012) 47:22-48:21.

15.     In connection with Hurricane Ike and pursuant to Defendant Jefferson County, Texas' emergency closing policy, all corrections officers were ordered to report to the Jefferson County Courthouse by 8:00 p.m. every night and remain there until 6:30 a.m. the following morning for the period September 12, 2008 through September 20, 2008.  Ex. F, Emergency Closing Policy; Ex. H, Order (Sep. 15, 2008).

16.     Pursuant to Defendant Jefferson County, Texas' emergency closing policy, all essential personnel, including corrections officers, receive an emergency pay premium equal to their normal hourly rate during all declared emergencies; in other words, for the duration of the state of emergency created by Hurricane Ike, corrections received pay at two (2) times their normal hourly rate for all hours worked except as described in paragraph 20 below.  Ex. F, Emergency Closing Policy at ¶ 6 ("[A]ll essential employees … will be compensated at 2 times their hourly salary for the duration of the emergency closure … .").

17.     Defendant Jefferson County, Texas was aware that there were potential problems with its emergency closing policy and how that policy impacted the corrections

officers' regular and overtime pay at least as early as September 23, 2008.  In fact, Defendant Jefferson County, Texas conducted independent research on some of the same issues complained about in this lawsuit but stopped when it discovered United States Department of Labor ("DOL") regulations that were incompatible with its position and made a deliberate decision to ignore those regulations and their impact on the county's emergency closing policy and the corrections officers' regular and overtime pay.  Ex. I, Email Chain (Sep. 23, 2008); Ex. J, Memorandum from Patrick Swain to File (Oct. 7, 2008).

18.     On October 1, 2008, at least one other Texas county impacted by Hurricane Ike and faced with the same pay issues as those involved in this lawsuit took the course of action required by the FLSA exactly opposite the one taken by Defendant Jefferson County, Texas: Galveston County, Texas paid its employees for all hours worked and at one and one-half times their regular rates for all overtime hours worked.  Ex. K, Sara Foley, *Police To Get 2 Weeks' Ike Pay*, GALVESTON CO. DAILY NEWS, Oct. 1, 2008 ("Under the Fair Labor Standards Act, when police or firefighters aren't allowed to return home, they must be paid regardless of whether they are working.").

19.     The first regular payday impacted by the pay practices complained about in this lawsuit was October 3, 2008.  Ex. L, Dep. of Fran Lee (Jul. 12, 2012) 57:23-58:19.

20.     In spite of being confined to the courthouse and away from their families, corrections officers were not paid from 8:00 p.m. until 6:30 p.m.; additionally, time spent at the courthouse was not considered in determining corrections officers' entitlement to overtime pay under the FLSA.  Ex. I, Email Chain (Sep. 23, 2008) ("No, we don't pay for

sleep time."); Ex. A, DOL Compliance Action Report (Mar. 24, 2010); Ex. M, DOL Compliance Action Report (Sep. 28, 2010).

21.     Separately, Defendants did not pay corrections overtime at one and one-half times their regular rates of pay for hours worked in excess of forty (40) per workweek in connection with Hurricane Ike.  Ex. A, DOL Compliance Action Report (Mar. 24, 2010); Ex. M, DOL Compliance Action Report (Sep. 28, 2010); Ex. N, Defs.' Answers to Pl.'s First Interrogs. (Oct. 25, 2011).

22.     As a result of Defendants' failure to pay corrections officers for all hours worked and at one and one-half times their regular rates for hours worked in excess of forty (40) per workweek, a grievance was filed against Defendant Jefferson County, Texas.  Ex. O, Grievance (Oct. 28, 2008).

23.     The grievance was submitted to binding arbitration.  The arbitrator ultimately sustained the grievance and rendered an award in favor of the corrections officers on June 1, 2009; the arbitrator entered a clarified awarded on June 19, 2009.  Ex. P, Award of the Arbitrator (Jun. 1, 2009); Ex. Q, Clarified Award of the Arbitrator (Jun. 19, 2009).

24.     Defendant Jefferson County, Texas interpreted the arbitrator's award as requiring corrections officers to reimburse it for an overpayment of wages; the corrections officers disagreed and filed a lawsuit[8] in state court to confirm the arbitration award.  Ex. R, Email Chain (Jun. 24, 2009) ("I think we actually won part of this, i.e., the

---

[8] That lawsuit was voluntarily dismissed pursuant to TEX. R. CIV. P. 162 on August 4, 2011.  *See*, Notice Regarding Related Litigation (Docket Entry No. 183).

double-up pay does not apply to call back and stand by time.  You read it that way as well?  I think it [is] about time to post this on the agenda so we need to work up on net cost to the court.").  *See also*, *Jefferson Co. Assoc. of Deputy Sheriffs and Correction Officers v. Jefferson Co., Tex.*, No. E-189265 (172nd Dist. Ct., Jefferson County, Tex. filed Jan. 27, 2011).

25.    Separately, Plaintiff filed a complaint with the DOL seeking unpaid regular and overtime wages.  Ex. S, DOL Complaint (Jan. 26, 2009).

26.    After a thorough investigation, the DOL determined that Jefferson County, Texas violated the FLSA and was liable to four hundred ninety-one (491) of its employees, including corrections officers, for back wages totaling $1,124,949.73 and that Jefferson County, Texas failed to keep accurate records as required by 29 U.S.C. § 211(c) and 29 C.F.R. pt. 516.  Ex. A, DOL Compliance Action Report (Mar. 24, 2010); Ex. M, DOL Compliance Action Report (Sep. 28, 2010); Ex. T, DOL Summary of Unpaid Wages (Mar. 17, 2010).

27.    Defendant Jefferson County, Texas refused to comply with the DOL's request that it pay $1,124,949.73 in back wages and declined to enter into a tolling agreement.   Ex. A, DOL Compliance Action Report (Mar. 24, 2010) at pp. Bingham0007, Bingham0013; Ex. M, DOL Compliance Action Report (Sep. 28, 2010) at p. Bingham0005; Ex. U, Email from Patrick Swain to DOL (Mar. 22, 2010) ("The guidance provided by the [Jefferson County Commissioners'] Court was to decline to pay the unpaid wages."); Ex. V, Email Chain (Apr. 7, 2010) (informing DOL that county would not enter into tolling agreement).

28.     As a result of Defendant Jefferson County's refusal to pay, the Jefferson County Association of Deputy Sheriffs and Corrections Officers ("the Association"), a labor union, filed a lawsuit against Jefferson County, Texas on behalf of its members in the United States District Court for the Eastern District of Texas just days before the second anniversary of Hurricane Ike.  *See*, *Jefferson Co. Assoc. of Deputy Sheriffs and Correction Officers v. Jefferson Co., Tex.*, No. 1:10-cv-00535 (E.D. Tex. filed Sep. 7, 2010) (referred to as "the September 2010 lawsuit").

29.     Because of the pendency of the September 2010 lawsuit, the DOL declined to pursue any claims on behalf of Jefferson County, Texas employees, including corrections officers, and sent letters to affected employees advising them their right to bring a lawsuit under the FLSA to recover unpaid regular and overtime wages.  Ex. A, DOL Compliance Action Report (Mar. 24, 2010) at p. Bingham0013.

30.     However, Defendant Jefferson County, Texas moved to dismiss the September 2010 lawsuit under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief should be granted, arguing principally that labor unions do not have standing to pursue a claims for unpaid wages and unpaid overtime wages under the FLSA on behalf of their members.  Ex. W, Motion to Dismiss (Oct. 11, 2010).

31.     United States District Judge Ron Clark ultimately granted Defendant Jefferson County, Texas' Rule 12(b)(6) motion and dismissed the case, without granting leave to amend, on November 5, 2010.  Ex. X, Order of Dismissal (Nov. 5, 2010)

32.     The Association filed the instant lawsuit on February 1, 2011 and subsequently retained MOORE & ASSOCIATES on April 26, 2011.  Pls.' Original Compl. (Docket Entry No. 1); Mot. to Substitute as Lead Counsel (Docket Entry No. 4).

### IV.  ISSUE TO BE RULED UPON BY THE COURT

**A.     Issue**

At this stage, the issue is whether Defendants are entitled to summary judgment under FED. R. CIV. P. 56 on their limitations defense, specifically with respect to Plaintiff's allegation that Defendants acted willfully and that a three-year statute of limitations is appropriate.  *See*, 29 U.S.C. § 255(a).

**B.     Standard of Review**

"Summary judgment is appropriate [if the summary judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Mello v. Sara Lee Corp.*, 431 F.3d 334 (5th Cir. 2005) (quoting FED. R. CIV. P. 56).  An issue about a material fact is considered genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).  At the summary judgment stage, the Court is not to weigh the evidence or determine the truth of the matter; rather, the trial judge is to determine only whether there is a genuine issue for trial.  *Id*. at 249; *Amburgey v. Corhart Refractories Corp., Inc.,* 936 F.2d 805, 809 (5th Cir. 1991).  The Court is also not to make credibility determinations or draw legal inferences from the facts for the movant.  *Dibidale of Louisiana, Inc. v. Am. Bank & Trust Co.*, 916 F.2d 300, 307-08 (5th Cir. 1990).  Under FED. R. CIV. P. 56, a motion for summary judgment should be granted

only if from the pleadings, depositions and other evidence before the Court, the movant can demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56; *Anderson*, 477 U.S. at 256-57.

The party seeking summary judgment bears the initial burden of demonstrating that there exists no genuine issue as to any material fact.  *Shields v. Grocers Supply Co.*, 568 F. Supp. 61, 63 (S.D. Tex. 1983).  In *Celotex Corp. v. Catrett*, the Supreme Court further stated that the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.  477 U.S. 317, 324 (1986). Furthermore, all inferences from the underlying facts must be drawn in favor of the party opposing summary judgment, and the facts must be viewed in the light most favorable to the nonmovant.  *Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986); *United States v. Diebold*, 369 U.S. 654, 655 (5th Cir. 1990).  Additionally, as long as there appears to be some evidentiary support for the disputed allegations, the motion must be denied.  *Celotex Corp.*, 477 U.S. at 331-33; *Coke v. General Adjustments Bureau*, 640 F.2d 584, 595 (5th Cir. 1981) (en banc); *McIntyre v. Kroger Co.*, 863 F. Supp. 355, 357 (N.D. Tex. 1994).  The Court must take all of the nonmovant's evidence as true, even if there is contradictory evidence presented by the movant, and the Court is to draw all reasonable inferences in the nonmovant's favor.  *Melton v. Teachers Ins. & Annuity Assoc. of Am.*, 114 F.3d 557, 559 (5th Cir. 1997); *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).  Lastly, even if the standards of FED. R. CIV. P. 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  *Anderson*, 477

U.S. at 255; *accord*, *Veillon v. Exploration Servs., Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989).

## V.  SUMMARY OF THE ARGUMENT

Defendants are not entitled to summary judgment under FED. R. CIV. P. 56 on their limitations defense because there are genuine issues of material facts as to whether Defendants acted willfully and the appropriate statute of limitations.

## VI.  ARGUMENT & AUTHORITIES

### A.  The FLSA

The FLSA requires covered employers to pay nonexempt employees at not less than the minimum wage and at one and one-half times their regular rate for all hours worked in excess of forty (40) during a workweek.  29 U.S.C. §§ 206(a)(1), 207(a)(1).  It also requires employers to maintain certain records to document compliance with the minimum wage and overtime requirements of the Act.[9, 10]  29 U.S.C. § 211(c); 29 C.F.R.

---

[9] Specifically, an employer must maintain the following records: (i) the employee's personal identifying information and (ii) essential wage and hour information (i.e., pay period and date of payment, basic pay rate, daily and weekly hours, straight time and overtime earnings, additions to and deductions from wages, and total wages paid each pay period).  29 C.F.R. § 516.27.

[10] In cases like this one where the employer fails to discharge its duty to maintain accurate time records as required by 29 C.F.R. § 516.27, the burden of proof shifts from the employee to the employer.  "In such a situation … an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Beliz v. McLeod*, 765 F.2d 1317, 1330 (5th Cir. 1985); *Castillo v. Givens, Inc.*, 704 F.2d 181, 194-95 (5th Cir. 1983); *Skipper v. Superior Dairies*, 512 F.2d 409, 419-20 (5th Cir. 1979).  The employer cannot be heard to complain about the imprecision of the employee's proof, since it was the employer's failure to maintain complete and accurate pay and time records that made the relaxed burden of proof necessary, and the employee should not be penalized by this default on the part of the employer.  *Mt. Clemens Pottery Co.*, 328 U.S. at 680.

pt. 516.  To establish a prima facie violation of the FLSA, a plaintiff generally must show (i) the existence of an employment relationship with the defendants; (ii) that the employee was covered by the FLSA; (iii) that the employer had actual or constructive knowledge of overtime worked or wage payments in violation of the FLSA; and (iv) the amount owed.[11]  29 U.S.C. §§ 203(g), 206(a), 207(a); *Mt. Clemens Pottery Co.*, 328 U.S. at 687; *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 621 (8th Cir. 1991).

"The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'"  *Reyes v. Tex. EZPAWN, L.P.*, 459 F. Supp. 2d 546, 565 (S.D. Tex. 2006) (quoting 29 U.S.C. § 255(a)). "[A] cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21(b).  In this case, Plaintiff's FLSA claims first accrued on October 3, 2008.  Ex. L, Dep. of Fran Lee (Jul. 12, 2012) 57:23-58:19.  Since this lawsuit was not filed until February 1, 2011, Plaintiff and members of the class must show that Defendants acted willfully; otherwise their claims are barred by limitations.  *See*, 29 U.S.C. § 255(a). Defendants argue in their Motion for Summary Judgment (Docket Entry No. 224) that there is no evidence to support a finding of willfulness and that Court should, therefore, grant summary judgment under FED. R. CIV. P. 56 on their limitations defense.  However,

---

[11] The amount owed is subject to the burden-shifting principles discussed in *supra* note 10.

because there are genuine issues as to material facts as to whether Defendants acted willfully, their Motion for Summary Judgment (Docket Entry No. 224) should be denied.

## B.     FLSA Violations

Defendants violated the FLSA by not paying Plaintiff and other corrections officers for all hours worked and at one and one-half times their regular rates for all overtime hours worked.   With respect to the former, Defendants ordered Plaintiff and other corrections officers to report to the Jefferson County Courthouse by 8:00 p.m. every night and remain there until 6:30 a.m. the following morning for the period September 12, 2008 through September 20, 2008 but did not pay them, referring to it as "sleep time."   Ex. F, Emergency Closing Policy; Ex. H, Order (Sep. 15, 2008); Ex. I, Email Chain (Sep. 23, 2008) ("No, we don't pay for sleep time."); Ex. A, DOL Compliance Action Report (Mar. 24, 2010); Ex. M, DOL Compliance Action Report (Sep. 28, 2010). This plainly violates the FLSA.[12]   *See*, 29 C.F.R. §§ 785.20-785.22.   Additionally, Defendants failed to include corrections officers' emergency pay premium when calculating their regular and overtime rates.   Ex. F, Emergency Closing Policy at ¶ 6 ("[A]ll essential employees … will be compensated at 2 times their hourly salary for the duration of the emergency closure … ."); Ex. A, DOL Compliance Action Report (Mar. 24, 2010); Ex. M, DOL Compliance Action Report (Sep. 28, 2010); Ex. N, Defs.' Answers to Pl.'s First Interrogs. (Oct. 25, 2011); Ex. T, DOL Summary of Unpaid Wages

---

[12] There are some limited exceptions applicable to public fire protection and law enforcement employees. 29 C.F.R. §§ 553.222-553.223.  However, those exceptions are affirmative defenses that must specifically pleaded by a defendant under FED. R. CIV. P. 8(c) or else waived.  *See, Johnson v. City of Columbia,* 949 F.2d 127, 129-30 (4th Cir. 1991) (en banc).   Since neither Jefferson County, Texas or Sheriff G. Mitch Woods have done so, they have been waived.  *Funding Sys. Leasing Corp.,* 530 F.2d at 95.

(Mar. 17, 2010).   In other words, Defendants contend that since corrections officers' hourly rate during the state of emergency created by Hurricane Ike was equal to two (2) times their normal hourly rate, no overtime payments were required.   (*Id.*)   However, DOL regulations clearly provide premium pay for work performed during disasters must be included in the regular rate and, consequently, the overtime rate.   29 C.F.R. § 778.207(b).

## C.    Willfulness

The FLSA provides a three-year limitations period where a plaintiff's cause of actions arises out of a willful violation.   *Reyes*, 459 F. Supp. at 565 (quoting 29 U.S.C. § 255(a)).   A violation of the FLSA is considered willful if the defendant either knew its conduct violated the law or showed reckless disregard for whether its actions complied with the Act.   *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003) ("Under the FLSA, a violation is 'willful' if the employer either knew or showed reckless disregard for … whether its conduct was prohibited by the statute.") (internal citations and quotations omitted).   "The burden of showing that an FLSA violation was 'willful' falls on the plaintiffs."   *Stokes v. BWXT Pantex, L.L.C.*, 424 F. App'x 324, 326 (5th Cir. 2011).   However, "[b]ecause willfulness is a question of fact, summary judgment in favor of the employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of willfulness."   *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009). Evidence of willfulness comes in many forms.   It can include one or more of the following: (i) admissions that an employer knew it was violating the FLSA prior to the

14

lawsuit; (ii) continuation of a pay practice without further investigation after being put on notice that the practice violated the FLSA; (iii) repeated violations of the FLSA; (iv) evidence of a failure to keep accurate records as required by 29 U.S.C. § 211(c) and 29 C.F.R. pt. 516; and/or (v) internal audits or memoranda showing possible violations. *Singer*, 324 F.3d at 821-22 (employer admissions); *Reich v. Bay, Inc.*, 2 F.3d 110, 117 (5th Cir. 1994) (DOL informed employer that pay practice violated Act but employer failed to investigate); *Brock v. Superior Care*, 840 F.2d 1054, 1062 (2d Cir. 1988) (violation willful where employer had history of FLSA violations and promised DOL future compliance with the Act); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) (same); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002) ("[A]n employer's recordkeeping practices may nonetheless corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime."); *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334-35 (10th Cir. 1998) (internal audits); *Bull v. United States*, 68 Fed. Cl. 212 (Fed. Cl. 2005) (internal memoranda).

Defendants argue in their Motion for Summary Judgment (Docket Entry No. 224) that there is no evidence that they acted willfully and that the Court should therefore grant them summary judgment under FED. R. CIV. P. 56.  However, there is competent summary judgment evidence that would support a finding of willfulness.  As an initial matter, Defendant Jefferson County, Texas has a documented history of noncompliance with the FLSA.  Ex. B, DOL Case Summary (Sep. 5, 1996); Ex. C, DOL Case Summary (Nov. 5, 1997); Ex. A, DOL Compliance Action Report (Mar. 24, 2010) at p. Bingham00008 (discussing prior history); Ex. D, Letter from DOL to Cary Erikson (Nov.

10, 2011); Ex. E, Dep. of Patrick Swain (Jul. 19, 2012) 25:18-28:19.  In fact, the DOL

recently assed civil money penalties against the county because it is a repeat offender.

Ex. D, Letter from DOL to Cary Erikson (Nov. 10, 2011) ("It has also been determined

that violations of the minimum wage and/or overtime pay provisions of the Act were

disclosed by an investigation conducted by this agency *in 11/15/1997, after which you*

*had given your assurance of full future compliance with all provisions of the Act*. … The

violations disclosed in this investigation *and your history of prior violations* have resulted

in the assessment of a civil money penalty pursuant to section 16(e) of the FLSA and

Regulations Part 578.") (emphasis added).

In this case, Defendants knew that county employees, including corrections

officers, were entitled to overtime pay, regardless of whether there was an emergency,

well before Hurricane Ike made landfall:

> Q: Okay.   You understood that as a human resource
> professional that you could not draft a policy to drafty around the
> county's obligations under the Fair Labor Standards Act?
>
> A: Correct.
>
> Q: Okay.   You understood that despite—or irrespective of
> what hourly rate someone was to be paid, regardless of whether or
> not it was an emergency, the employee is still required to be paid
> overtime if they work more than 40 hours in any seven-day
> workweek?
>
> ***
>
> A: Yes.

Ex. G, Dep. of Cary Erikson (Jul. 12, 2012) 56:14-25.  And they were acutely aware that

there were potential problems with the emergency closing policy and how that policy

impacted the corrections officers' regular and overtime pay during Hurricane Ike at least as early as September 23, 2008—over one (1) week before the corrections officers' claims began to accrue.  Ex. I, Email Chain (Sep. 23, 2008) (discussing "sleep" time). The county even elected to pay salaried, nonexempt personnel (including the county judge, his assistant, the district attorney, the director of human resources, and others) double their normal salaries for work performed in connection with Hurricane Ike and submitted those costs to the Federal Emergency Management Authority for reimbursement but was deliberately indifferent towards its very basic statutory obligations under the FLSA to pay overtime.  Ex. G, Dep. of Cary Erikson (Jul. 12, 2012) 69:2-72:6.

In spite of the county's decision to pay exempt personnel double their normal salaries, its checkered history with the DOL and even though Defendants ordered Plaintiff and other corrections officers to report to the Jefferson County Courthouse by 8:00 p.m. every night, including days off, and remain there until 6:30 a.m. the following morning, Defendants did not pay Plaintiff and other corrections officers for that time. Ex. I, Email Chain (Sep. 23, 2008); Ex. A, DOL Compliance Action Report (Mar. 24, 2010); Ex. M, DOL Compliance Action Report (Sep. 28, 2010).  In fact the evidence shows that on October 3, 2008—the same day that the corrections officers' claims first accrued—county auditor Patrick Swain, a certified public accountant, actually looked at DOL regulations requiring payment of sleep time when an employee is confined to an employer's premises. Ex. J, Memorandum from Patrick Swain to File (Oct. 7, 2008) at p. 3 (noting that DOL regulation was accessed on October 3, 2008).  However, Cary

Erikson, the county's director of human resources, who would presumably have more knowledge about FLSA issues than the county auditor, did nothing.  Ex. G, Dep. of Cary Erikson (Jul. 12, 2012) 80:5-80:20.

In the end, Jefferson County, Texas simply refused to pay corrections officers for their "sleep" time in spite of having actual notice of a legal obligation to the contrary. Ex. I, Email Chain (Sep. 23, 2008); Ex. J, Memorandum from Patrick Swain to File (Oct. 7, 2008) at p. 3; Ex. A, DOL Compliance Action Report (Mar. 24, 2010); Ex. M, DOL Compliance Action Report (Sep. 28, 2010).  In fact, the county candidly admits that there are no DOL regulations or opinion letters that support its decisions not to pay for "sleep" time and not to include emergency pay premiums in calculating its employees' regular and overtime rates.  Ex. G, Dep. of Cary Erikson (Jul. 12, 2012) 119:10-21.  Finally, the DOL specifically found that Defendant Jefferson County, Texas failed to failed to keep accurate records as required by 29 U.S.C. § 211(c) and 29 C.F.R. pt. 516.  Ex. A, DOL Compliance Action Report (Mar. 24, 2010) at p. Bingham0011 ("Incomplete time records maintained on correctional officers.  Employer failed to record all [hours worked].").  At a minimum, this evidence collectively suggests that Defendants showed a reckless disregard for whether their actions complied with the FLSA.  Ex. V, Email Chain (Apr. 7, 2010) ("Sure would be nice to take the mighty DOL down."); Ex. G, Dep. of Cary Erikson (Jul. 12, 2012) 119:10-21 (not relying on DOL regulations or opinion letters in decision not to pay overtime).  And since any single piece of evidence described above could by itself support a finding of willfulness, the Court should deny Defendants' Motion for Summary Judgment (Docket Entry No. 224).

## VII. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket Entry No. 224) should be denied.

Respectfully submitted,

**MOORE & ASSOCIATES**

By: s/ Melissa Moore
    Melissa Ann Moore
    Federal Id. No. 25122
    State Bar No. 24013189
    Curt Hesse
    Federal Id. No. 968465
    State Bar No. 24065414
    Lyric Center
    440 Louisiana Street, Suite 675
    Houston, Texas 77002
    Telephone: (713) 222-6775
    Facsimile: (713) 222-6739

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of September in the year 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Ms. Jessica L. Hallmark
Mr. Robert B. Dunham
DUNHAM HALLMARK, PLLC
4180 Delaware Street, Suite 301
Beaumont, Texas 77706

Mr. John S. Morgan
MORGAN LAW FIRM
2715 North Street, Suite 101
Beaumont, Texas 77701

s/ Melissa A. Moore
_____
Melissa Ann Moore

20